UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RECEIVED

JUN 0 5 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| JUAN ALBERTO ESTRADA, Individually and as Next of Kin of JOHN ALBERT ESTRADA, JR., Deceased, | * * * | |
| **Plaintiff,** | * | SA26CA3636 FB |
| | * | |
| vs. | * | Case No.: _____ |
| | * | |
| GUADALUPE COUNTY, TEXAS; GUADALUPE COUNTY SHERIFF'S OFFICE; Deputy KEVIN GASTON (#A33), Individually and in His Official Capacity; Deputy MATTHEW RAMOS (#A34), Individually and in His Official Capacity; Deputy JOHN EDWARDS, Individually and in His Official Capacity; Deputy TOMMY SIMMONS (#A36), Individually and in His Official Capacity; Deputy CHARIS BUTLER (#E4), Individually and in Her Official Capacity; Corporal ROBERT J. THIBODEAUX, Individually and in His Official Capacity; CITY OF SCHERTZ, TEXAS d/b/a SCHERTZ EMERGENCY MEDICAL SERVICES; WESS DAILEY, Individually; FELIPE GARCIA, Individually;  and  JOHN/JANE DOES 1-10, | * * * * * * * * * * * * * * * | **JURY TRIAL DEMANDED** |
| **Defendants.** | * | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS**

**UNDER 42 U.S.C. SECTION 1983 AND THE AMERICANS WITH  DISABILITIES ACT**

**AND DEMAND FOR JURY TRIAL**

1

- 2 -

## PRELIMINARY STATEMENT

1. This is a civil rights action arising from the unlawful use of excessive force, deliberate indifference to serious medical needs, and systematic failure to accommodate a known mental health disability by officers of the Guadalupe County Sheriff's Office (GCSO) and personnel of Schertz Emergency Medical Services, all acting under color of state law, against John Albert Estrada Jr. on June 6, 2024.

2. On June 6, 2024, John Albert Estrada Jr. — a 48-year-old man experiencing an acute amphetamine-induced psychotic episode — was responding to a call in his own neighborhood at 2945 Green Finch Canyon, Canyon Lake, Guadalupe County, Texas. He had self-inflicted superficial wounds and was in mental health crisis. He was not armed at the time GCSO deputies initiated physical contact. He was not charged with any crime. He posed no imminent threat to any officer. He threw his knife into a drainage ditch when commanded.

3. Despite these facts, GCSO deputies — with no less-lethal tools available, no effective mental health co-responder deployed, and no written justification for their restraint choices — applied wrist handcuffs, ankle shackles, and a full-body WRAP restraint device to John Albert Estrada Jr. and held him prone and on his side on Texas summer concrete pavement long enough to cause physician-confirmed partial thickness burns covering his entire abdomen, bilateral arms, and the full left side of his face. Five officers and at least two civilian bystanders participated. The GCSO Mental Health Supervisor arrived two minutes after John had already been transported in an ambulance.

4. During transport, the Physio-Control cardiac monitor documented an apnea alarm. John's respiratory rate fell to 6 breaths per minute — near apnea. A GCSO deputy (Corporal Robert J. Thibodeaux) was present in the ambulance throughout. No airway rescue intervention is documented anywhere in the eleven-page EMS report. John arrived at University Health San Antonio in shock, with a blood pressure of 80/48, requiring a blood transfusion. The raw cardiac monitor data file was modified by a paramedic thirty-one minutes after the EMS report was completed and signed.

5. The case was cleared by GCSO the same day. Kein Gaston – the first responding deputy was listed as the investigator of his own use of force. No internal affairs review was conducted. No use of force review was documented. The bodycam footage from five deputies, each of whom confirmed their cameras were activated, has not been produced. Deputy Edwards confirmed his discs were dropped into the evidence system. The county has represented that footage 'may not be located due to retention laws.'

6. John Albert Estrada Jr. survived the June 6, 2024, incident – but the injuries he sustained, including the discovery of an advanced renal cell carcinoma found incidentally on the trauma CT ordered that day, set in motion a chain of medical consequences.

7. Plaintiff Juan Alberto Estrada, father and next of kin of John Albert Estrada Jr., brings this action seeking compensatory and punitive damages, declaratory relief, and injunctive relief for the constitutional violations, deliberate indifference, disability discrimination, and municipal failures that led to his son's traumatic injuries.

**JURISDICTION AND VENUE**

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. section 1331 and 1343(a)(3) over claims arising under 42 U.S.C. Section 1983, the Fourth Amendment, and the Fourteenth Amendment to the United States Constitution.

9. This Court has jurisdiction over Plaintiff's Americans with Disabilities Act claims pursuant to 28 U.S.C. Section 1331 and 42 U.S.C. Section 12133.

10. Venue is proper in the Western District of Texas, San Antonio Division, pursuant to 28 U.S.C. Section 1391(b)(2), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Guadalupe County, Texas, within the District and Division. All Defendants reside or are located in the State of Texas.

-3-

11.  All conditions precedent to the filing of this action have been satisfied or are excused. Plaintiff provided written notice to Guadalupe County and the Guadalupe County Sheriff's Office through open records request in 2024 and 2026, establishing that litigation was anticipated.  No notice under the Texas Tort Claims Act is required for claims brought solely under 42 U.S.C. Section 1983 and Title II of the ADA.

## PARTIES

### A. Plaintiff

12. Plaintiff JUAN ALBERTO ESTRADA is an individual residing at 5026 Highridge Drive, Garland, Texas 75043.  He is the biological father and next of kin of JOHN ALBERT ESTRADA JR., deceased.  He brings this action individually and as the representative of the Estate of John Albert Estrada Jr.  Juan Alberto Estrada submitted all open records requests at issue in this case and has standing to bring all claims alleged herein.

### B. Defendants

13. Defendant GUADALUPE COUNTY, TEXAS is a political subdivision of the State of Texas with the capacity to sue and be sued.  Guadalupe County operates and funds the Guadalupe County Sheriff's Office and is responsible for the policies, customs, training, and supervision of GCSO personnel.  Guadalupe County may be served through the Guadalupe County Judge or County Clerk at 101 E. Court Street, Seguin, Texas 78155.

14. Defendant GUADALUPE COUNTY SHERIFF'S JOFFICE is a law enforcement agency of Guadalupe County, Texas, (GCSO), operated under the command of former Sheriff Arnold Zwicke at the time of the June 6, 2024 incident.  Guadalupe County Sheriff's Office (GCSO) is a policymaker for law enforcement purposes and may be sued as a governmental entity in this District.  Guadalupe County Sheriff's Office (GCSO) may be served at 2617 N. Guadalupe Street, Seguin, Texas 78155.

-4-

15. Defendant KEVIN GASTON (#A33) was at all relevant times a deputy employed by GCSO. He was the first responding officer to the June 6, 2024 incident, initiated physical contact with John Albert Estrada Jr., used force in restraining him, and was subsequently assigned as the investigator of his own use of force.  He is sued individually and in his official capacity. He may be served through Guadalupe County Sheriff's Office (GCSO) at 2617 N. Guadalupe Street, Seguin, Texas 78155.

16. Defendant MATTHEW RAMOS (#A34) was at all relevant times a deputy employed by GCSO.  He applied wrist handcuffs to John Albert Estrada Jr., obtained ankle shackles from Deputy Gaston's patrol unit, and applied those shakes.  He radioed dispatch at 15:20:55 – four minutes before EMS arrived – that John was 'banding his head,' establishing the restraint narrative before any independent witness was present.  He is sued individually and in his official capacity.  He may be served through Guadalupe County Sheriff's Office (GCSO) at 2617 N. Guadalupe Street, Seguin, Texas 78155.

17. Defendant JOHN EDWARDS was at all relevant times a deputy employed by GSCO.  He assisted in placing John Albert Estrada Jr. in the WRAP restraint device, confirmed his WatchGuard body camera was activated and that discs were dropped into evidence, and interviewed the civilian bystanders who assisted in the restraint.  He is sued individually and in his official capacity. He may be served through Guadalupe County Sheriff's Office (GCSO) at 2617 N. Guadalupe Street, Seguin, Texas 78155.

18. Defendant Tommy Simmons (#A36) was at all relevant times a deputy employed by GCSO.  He assisted in applying the WRAP restrain device to John Albert Estrada Jr.  He confirmed his body camera was activated.  He is sued individually and in his official capacity. He may be served through Guadalupe County Sheriff's Office (GCSO) at 2617 N. Guadalupe Street, Seguin, Texas 78155.

19. Defendant CHARIS BUTLER (#E4) was at all relevant times a deputy employed by GCSO. She assisted in applying the WRAP device and the soft helmet.  She followed the ambulance transporting John Albert Estsrada Jr. to University Health San Antonio and confirmed

Corporal Thibodeaux rode in the ambulance.  She is sued individually and in her official capacity. She may be served through Guadalupe County Sheriff's Office (GCSO) at 2617 N. Guadalupe Street, Seguin, Texas 78155.

20. Defendant CORPORAL ROBERT J. THIBODEAUX was at all relevant times a corporal employed by GSCO.  He rode in the Schertz EMS ambulance with John Albert Estrada Jr. during the entire transport from the scene to University Health San Antonio.  He was present in the ambulance with the apnea alarm fired, when John's respiratory rate fell to 6 breaths per minute, and when John arrived in shock at University Health San Antonio.  He filed no report.  He is sued individually and in his official capacity. He may be served through Guadalupe County Sheriff's Office (GCSO) at 2617 N. Guadalupe Street, Seguin, Texas 78155.

21. Defendant CITY OF SCHERTZ, TEXAS d/b/a SCHERTZ EMERGENCY MEDICAL SERVICES is a municipality of the State of Texas that operates Schertz EMS (Unit 094004, City of Schertz EMS – 094004), the emergency medical service that responded to the June 6, 2024 incident. Schertz EMS is responsible for the policies, training, protocols, and supervision of its paramedics including Defendants Wess Dailey and Felipe Garcia.  The City of Schertz may be served through its City Secretary at 1400 Schertz Parkway, Schertz, Texas 78154.

22. Defendant WESS DAILEY (Employee ID 111069) was at all relevant times an EMT-Paramedic employed by Schertz EMS.  He served as crew member on Medic 4 (Unit SZM4) on June 6, 2024.  He signed the EMS report at 15:52:30 and 15:52:42.  He modified the raw Physio-Control cardiac monitor data file (File 20240606153638_279) – which contains the complete apnea alarm record – at 18:49:41 on June 6, 2024, thirty-one minutes after his colleague Felipe Garcia had signed and completed the 11-page EMS narrative report.  He is sued individually.

23. Defendant FELIPE GARCIA (Employee ID 747316) was at all relevant times an EMT-Paramedic employed by Schertz EMS.  He served as the primary paramedic and crew member completing the report for Medic 4 on June 6, 2024.  He administered all medications

 including Ketamine 300mg IM and Droperidol 10mg IM to John Albert Estrada Jr., while John Albert Estrada's oxygen saturation was below normal.  He signed the completed EMS report as the report author at 18:18:10 on June 6, 2024.  He is sued individually.

24. Defendants JOHN/JANE DOES 1-10 are individuals whose identities are not yet known to Plaintiff, including but not limited to: the civilian bystanders who assisted GSCO deputies in physically restraining John Albert Estrada Jr. (identified in Deputy Edwards' report as having assisted Deputy Gaston, but who identities GCSO supervisor has withheld under Texas Government Code Chapter 552);  any GSCO supervisor who directed or approved the June 6, 2024 use of force; and any other individuals whose conduct contributed to the constitutional violations alleged herein.  Plaintiff will amend this Complaint to identify JOHN/JANE DOE Defendants as their identities become known through discovery.

## FACTUAL ALLEGATIONS

### A.  John Albert Estrada Jr. – Background

26. John Albert Estsrada Jr. was born February 15, 1976.  He was 48 years old on June 6, 2024.  He was employed at Walmart on Walnut Drive in New Braunfels, Texas.  He had a prior diagnosis of depression and was taking a sleeping medication.  He had no chronic psychotic disorder.  He had no prior history of violence toward law enforcement.

27. On June 6, 2024, John Albert Estrada Jr. was experiencing an acute amphetamine-induced psychotic episode.   University Health physicians later diagnosed this as "Amphetamine-induced psychotic disorder (ICD F15.959) and concluded: 'Diagnosis is most consistent with stimulant (methamphetamine) induced psychotic disorder.'  This episode was temporary.  BY discharge on June 10, 2024, John Albert Estrada Jr. was fully oriented, logical, and free of all psychotic symptoms.

### B.  The 911 Call and Dispatch – June 6, 2024

28. At approximately 15:02:58 on June 6, 2024, a neighbor called Guadalupe County dispatch to report a confused male running between houses.  The caller described a man who appeared confused and disoriented.  No weapons were reported at this initial call.

29. At 15:09:35, a delivery driver (UPS driver) called 911.  The call escalated through dispatch: 15:09:05 – 'possible suicidal subject'; 15:09:36 – 'male stabbing himself'; 15:09:46 – 'stabbing himself in neck, ribs, all over'; 15:09:54 – 'blood is coming from his neck.' The caller reported John believed someone was chasing him.  A knife was reported at 15:11:16 as a black pocket knife 4-5 inches long.

-8-

30. Schertz EMS Medic 4 was dispatched at 15:11:46. Guadalupe County Sheriff's Office deputies were already in route. The GCSO Incident/Offense Report lists the incident time at 3:00 PM – a round number that predates the first documented CAD event at 15:02:58 and was adopted into University Health's medical record as 'injury Time: 1500.

**C. Arrival on Scene – John Was Unarmed Before Restraint Was Applied**

31. Deputy Kevin Gaston (#A33) arrived on scene first. In his own incident report, Deputy Gaston documents: 'I arrived on scene and saw John pacing back and forth in the cul de sac with a knife in his hand. I drew my duty weapon, pointed it at John, and advised him to drop the knife. **John threw the knife towards the drainage ditch at the edge of the cul de sac.** John continued pacing back and forth and it did not appear as though John had any weapons on his person.'

32. John Albert Estrada Jr. complied with the command to drop the weapon. He was unarmed when physical contract was initiated. Deputy Gaston further documents that John came toward him and he 'placed my left leg in front of his right leg and forced him to the ground.'

33. Despite John being unarmed, Deputy Gaston sat on John's torso, and John was rolled to his stomach on the pavement. Deputy Ramos (#A34) arrived, applied wrist handcuffs, obtained ankle shackles from Deputy Gaston's patrol unit, and applied those shackles to John's ankles. Deputies Edwards, Simmons, and Butler also arrived. John was placed in the WRAP full-body restraint device. Two civilian bystanders, including the UPS driver who had called 911, assisted GCSO deputies in physically restraining John.

34. At 15:20:05 – five minutes before EMS arrived – GCSO's own CAD log records: 'A34 HAS LEG CHAINS AND HANDCUFF.' At 15:20:55, Deputy Ramos radioed: 'A34 ADVISED HE BANGING HIS HEAD.' This transmission – documenting that John was allegedly banging his head on the roadway – was made four minutes and eight seconds before any independent medical witness arrived on scene. No party other than GSCO deputies observed John's alleged head-banging.

35. At 15:30:31, the CAD records: 'WRAP COMPLETE @1530.' The WRAP restraint device was fully applied six minutes before EMS took first vital signs at 15:36:00. John was maintained in prone and lateral positions on the concrete pavement throughout this period.

**D. The Pavement Burns – Physician -Confirmed Thermal Injuries**

36. When Schertz EMS Medic 4 arrived at 15:25:03 and made patient contact at 15:25:29, the first EMS Assessment at 15:25:40 documented, under Skin findings verbatim: **'BURNS THROUGHOUT TORSE FROM HOT PAVEMENT.'** This is the EMS paramedic's own documentation – not a family characterization.

37. University Health physicians documented upon arrival: 'Diffuse partial thickness burns and bullae to abdomen. Burns above and below left eye. Burns to right upper extremity, distal left upper extremity, blistering right hand.' The Trauma H&P; noted: '*superficial partial thickness burns from the pavement to his anterior abdomen measuring 2% TBSA.*' Burns were debrided and dressed with Mepilex. University Health's discharge diagnoses include 'Burn as a primary diagnosis.'

38. The physician also documented: '**RLE: bilateral ligature marks to ankles from handcuffs.**' This is an independent physician's documentation of restraint-related injury to both ankles, appearing in the official University Health medical record.

39. Family photographs taken at University Health San Antonio show: the full left side of John's face burned uniformly from temple to chin, around the eye socket, across the cheekbone; bilateral forearm burns from elbow to wrist on both arms simultaneously; and the abdominal wound during debridement.  This burn pattern is inconsistent with self-directed head impact, which would produce localized forehead trauma.  It is consistent with the face and both arms being held flat against a hot surface simultaneously for a sustained period.

**E. EMS Response – False History, Dual Chemical Sedation, Respiratory Collapse**

40. At patient contact (15:25:29), GCSO deputies relayed to EMS that the forehead contusion was from 'PT pounding his own head on the pavement.' This characterization came exclusively from GCSO deputies before any independent witness arrived and was entered into the official EMS narrative as fact.

41. At 15:36:00, first vital signs showed SP02 of 92% - below the normal minimum of 95%. At 15:36:44 – forty-four seconds later – Defendant Felipe Garcia administered 300mg Ketamine IM.  Ketamine is a known respiratory depressant.  It was administered to a patient with pre-existing oxygen compromise.  The response was documented as 'Unchanged.' At 15:43:57, Felipe Garcia administered 10mg Droperidol IM – a second sedative – seven minutes after ketamine produced no response.

-11-

42. The vital signs during transport documented a catastrophic respiratory trajectory: SP02 fell to 89% at 15:55:38. Blood pressure fell to 88/60 - shock range - at 15:55:38. IV fluids were not administered until 16:34:09 – thirty-nine minutes after shock-range blood pressure was recorded.  Respiratory rate fell to 8 breaths/minute at 16:35:04, and to **6 breaths/minute at 17:02:20** – near apnea – seven minutes before hospital arrival.

43. At approximately 16:10:38 - 16:11:41 (the precise timestamp is itself the subject of a discrepancy between documents), the Physio-Control cardiac monitor documented an **APENA ALARM**, EtC02 at the time of the alarm was 8 mmHg – normal is 35-45 mmHg. An EtC02 of 8 means the patient was exhaling almost no carbon dioxide – consistent with near-complete respiratory cessation.  Defendant Corporal Thibodeaux (GCSO) was in the ambulance.  Not one line in the eleven-page EMS report documents any airway rescue intervention – bag-valve-mask ventilation, airway adjuncts, or reversal agents – following this alarm.

44. The cardiac monitor transport was classified Priority 3 – No lights or Sirens – and that priority was never escalated despite documented near-apnea.

**F. The Cardiac Monitor Data Modification**

45. Defendant Felipe Garcia signed the completed 11-page EMS Run Report at 18:18:10 on June 6, 2024. At 18:49:41 – thirty-one minutes later – Defendant Wess Dailey modified the attached raw Physio-Control cardiac monitor data file, identified in the EMS record as File Name 20240606153638_279. This file contains the complete apnea alarm record and all raw physiological data from transport.  The basis and nature of this modification are unknown. The report was complete. The modification occurred after the report was signed.

**G. Hospital Findings – University Health San Antonio**

46. John Albert Estrada Jr. arrived at University Health San Antonio at 17:09:54. His blood pressure on arrival was 80/48 – severe hypotension. He received one unit of whole blood. The Trauma H&P, written by Dr. Madeline M. Silva documented: 'Per EMS, he recently used methamphetamines and stabbed himself multiple times prior to EMS arrive. Pt was TACKED BY POLICE on the concrete, very agitated and had to be restrained by police and was given ketamine in the field.'

47. Laboratory findings included: White blood cell count of 33.41 K/mcL (critically elevated); Creatinine 2.18 (acute kidney injury); Lactic acid 4.4 mmol/L (critically elevated – tissue hypoxia); and Creatine Kinase (CK) that peaked at 8,532 U/L on June 7, 2024 – forty-two times the upper limit of normal. University Health's own discharge diagnosis classified this as **'NON-TRAUMATIC rhabdomyolysis'** (ICD M62.82), meaning the institution itself determined the muscle breakdown was not caused by the superficial wounds.

48. The trauma CT ordered on June 6, 2024, revealed a 3.8 x 5.7 cm left renal mass later confirmed as renal cell carcinoma – upgraded to 7.0 x 6.3 x 6.9 cm on three-phase CT on June 7, 2024. John Albert Estrada Jr. did not know he had cancer before the June 6, 2024, incident. This diagnosis was made possible only because the June 6 incident triggered a trauma CT scan.

49. John Albert Estrada Jr. was discharged on June 10, 2024, four days after admission, with burns, resolved rhabdomyolysis, and a confirmed cancer diagnosis. His psychiatric

-13-

episode had fully resolved. His mental status at discharge was documented as: no hallucinations, no delusions, logical thought process, oriented x3, memory intact, judgment good. He was given Tramadol 50mg PRN for burn pain – the only discharge medication related to this incident.

## H. GCSO Investigation – Self-Clearance, Same Day

50. GCSO Incident/Offense Report #24-07150 lists the Investigator Assigned as Kevin Gaston – the first responding deputy who initiated physical contact with John and who was the primary author of the incident report. The case Status is listed as 'Cleared' with a Status Date of 06/06/2024 – the same day as the incident. John Albert Estrada Jr. had not yet been discharged from University Health when his case was cleared.

51. No use of force investigation is documented. No supervisory review is documented. Five body cameras were confirmed activated. No footage has been produced. The open records response identified Captain John Koch as the captain in charge – Captain Koch died on April 26, 2024, forty-one days before the incident. The GSCO officer who served as Captain on June 6, 2024, has not been identified in any document provided to Plaintiff.

## I. The Body Camera Evidence

52. Each of the five GSCO deputies who filed reports confirmed in their own written reports that their cameras were recording: Gaston: 'Body Camera: On – In Evidence No; Ramos: 'Body Worn Camera: On – Not in Evidence; Edwards: 'WatchGuard BWC: Activated – Discs dropped in evidence'; Simmons: 'Body camera: on" Butler: 'Body Camera: Activated.' In response to Plaintiff's open records request, GCSO stated the footage 'may not be located due to retention laws.'

-14-

53. As of June 6, 2024, GCSO had no tasers and no other less-lethal devices for patrol deputies.  This is confirmed by incoming Sheriff Joshua Ray's March 2025 public statement that he intends to request funding for tasers because deputies are 'not currently equipped' with them.  Former Sheriff Zwicke, in office on June 6, 2024, publicly defended GCSO's response posture after a second mental health fatality.

54. On August 27, 2024 – eighty-two days after John's incident – GCSO Deputy Gary Courtney fatally shot Kenneth Grimm, age 77, who had dementia, Alzheimer's disease, and Parkinson's . Grimm's family had called 911 for medical help.  Deputy Courtney had no taser.  This second incident, involving the same county, the same absence of less-lethal tools, and the same failure of mental health crisis response gave rise to a federal civil rights lawsuit: Grimm v. Guadalupe County, et al., No. 5:25-cv-01555 (W.D. Tex., filed November 23, 2025), alleging the same Monell deficiencies.

55.  GCSO's Policy 5.11.003 requires that when restraints are used on an Emotionally Disturbed Person, 'the officer's report shall reflect that restraints were used and why the restraints were used. 'Not one of the five officer reports filed in connection with the June 6, 2024 incident contains any written justification for the application of ankle shackles – the most restrictive restraint applied to an unarmed man who had discarded his knife before physical contact.

-15-

## CAUSES OF ACTION

### COUNT I
**Excessive Force in Violation of the Fourth Amendment 42 U.S.C. § 1983 (Against Defendants Gaston, Ramos, Edwards, Simmons, Butler, and John/Jane Does 1–10 in their Individual Capacities)**

60. Plaintiff incorporates all preceding paragraphs by reference as though fully set forth herein.

61. The Fourth Amendment guarantees the right of persons to be free from unreasonable seizures, including the use of excessive force by law enforcement officers. *Graham v. Connor*, 490 U.S. 386 (1989). Force is excessive when it is not objectively reasonable under the totality of the circumstances.

62. At the time Defendants Gaston and Ramos initiated physical contact with John Albert Estrada Jr., John had thrown his knife into a drainage ditch and was unarmed. Gaston's own report confirms: 'it did not appear as though John had any weapons on his person.' The use of physical takedown, prone restraint on hot concrete, wrist handcuffs, ankle shackles, and a full-body WRAP device against an unarmed individual in mental health crisis who had complied with the command to discard his weapon was objectively unreasonable under Graham.

63. The force applied caused physician-confirmed 2% TBSA partial thickness burns to John's abdomen, bilateral arms, and face; physician-documented bilateral ankle ligature marks from handcuffs; a left frontal scalp hematoma confirmed by CT; and non-traumatic rhabdomyolysis with a CK peak of 8,532 — forty-two times normal — classified by University Health as non-traumatic in origin.

64. The individual Defendants acted under color of state law and their conduct constitutes an unreasonable seizure in violation of the Fourth Amendment. Plaintiff is entitled to compensatory and punitive damages.

### COUNT II

–16–

**Deliberate Indifference to Serious Medical Need Fourteenth Amendment / 42 U.S.C. § 1983 (Against Defendants Thibodeaux, Garcia, Dailey, City of Schertz EMS, and John/Jane Does 1–10)**

65. Plaintiff incorporates all preceding paragraphs by reference.

66. The Fourteenth Amendment prohibits deliberate indifference to the serious medical needs of persons in law enforcement custody. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference requires that the official was aware of facts from which an inference of substantial risk of serious harm could be drawn, and actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

67. The Physio-Control cardiac monitor — a machine — documented an apnea alarm. The EtCO2 reading was 8 mmHg. The respiratory rate was 6 breaths per minute. These readings are objective, machine-generated data. Any trained paramedic and any law enforcement officer who had received basic EMS awareness training would understand that a respiratory rate of 6 and an apnea alarm represent a life-threatening emergency.

68. Defendant Thibodeaux was physically present in the ambulance when the alarm fired and when John's respiratory rate fell to 6. He filed no report of the transport. No document produced in this case reflects any action taken by Thibodeaux in response to John's respiratory deterioration.

69. No airway rescue intervention — bag-valve-mask ventilation, airway adjunct, reversal agent, or upgrade in transport priority — is documented anywhere in the eleven-page EMS Run Report following the apnea alarm. The raw data file containing the complete alarm record was modified by Defendant Dailey thirty-one minutes after the report was signed, raising serious questions about the integrity of the physiologic record.

70. The individual and municipal Defendants' deliberate indifference to John's serious medical need during transport constituted a violation of his Fourteenth Amendment rights. Plaintiff is entitled to compensatory and punitive damages.

## COUNT III
## Municipal Liability — Monell v. Dept. of Social Services 42 U.S.C. § 1983 (Against Defendants Guadalupe County and GCSO)

71. Plaintiff incorporates all preceding paragraphs by reference.

72. Under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), a municipality is liable under §1983 when a constitutional violation results from an official policy, a widespread custom or practice, or a failure to train amounting to deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378 (1989).

73. **Official Policy — No Less-Lethal Equipment:** As of June 6, 2024, Guadalupe County made a deliberate policy decision not to equip patrol deputies with tasers or other less-lethal devices. This decision left deputies with no alternative to physical force when responding to mental health crisis calls. Incoming Sheriff Ray publicly confirmed in March 2025 that deputies were 'not currently equipped' with tasers and that he was requesting funding for them. Former Sheriff Zwicke publicly defended this posture after a second mental health fatality eighty-two days after John's incident.

74. **Widespread Custom — Two Incidents, Same Deficiencies, 82 Days:** The fatal shooting of Kenneth Grimm on August 27, 2024, under materially identical circumstances — mental health crisis, no taser, no effective co-responder, same county — establishes that the constitutional failures John experienced were not isolated. They reflect a widespread GCSO custom of responding to mental health crises with physical force as the default. *Grimm v. Guadalupe County*, 5:25-cv-01555 (W.D. Tex. 2025), makes the same Monell allegations against the same municipal defendant.

75. **Failure to Train — Mental Health Crisis Response:** GCSO's failure to equip and train deputies on mental health crisis response — when the need for such training was obvious given the high prevalence of mental health calls — constitutes deliberate indifference under *City of Canton*. GCSO Policy 5.11 acknowledges the need for EDP response yet the mental health supervisor was deployed too late and the policy was violated by every deputy who failed to document restraint justification.

−18−

76. **Failure to Supervise and Investigate:** GCSO permitted a deputy to self-investigate his own use of force, cleared the case the same day with no supervisory review, identified a deceased captain as the supervising officer, and has not produced body camera footage that five deputies confirmed was recording. This failure to supervise and investigate use of force incidents is itself a basis for Monell liability. *Brown v. Bryan Cnty.*, 219 F.3d 450 (5th Cir. 2000).

77. These policies, customs, and failures were the moving force behind the constitutional violations John Albert Estrada Jr. suffered on June 6, 2024. Plaintiff is entitled to compensatory damages against Guadalupe County.

## COUNT IV
### Violation of Title II of the Americans with Disabilities Act 42 U.S.C. § 12132
### (Against Defendants Guadalupe County and GCSO)

78. Plaintiff incorporates all preceding paragraphs by reference.

79. Title II of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132. The Supreme Court held in *Tennessee v. Lane*, 541 U.S. 509 (2004), that Title II applies to law enforcement activities.

80. John Albert Estrada Jr. was a qualified individual with a disability. His acute amphetamine-induced psychotic disorder — confirmed by University Health psychiatry as his primary diagnosis — is a mental impairment that substantially limited major life activities. His disability was apparent on scene: hallucinations, disorientation, inability to respond rationally to commands — all documented by EMS.

81. GCSO, as a public entity, was required to make reasonable accommodations for John's known disability before and during any use of force. The reasonable accommodation available to GCSO was its own designated Mental Health Supervisor, Sgt. Brian Lumpkin, and its partnership with Bluebonnet Trails community mental health. Neither was effectively deployed. Sgt. Lumpkin arrived two minutes after EMS

had already transported John away.

82. The absence of any less-lethal tools meant that GSCO's response to John's mental health disability was, by necessity, physical force. Courts have recognized that the failure to deploy available mental health accommodations before using force against a person in mental health crisis can constitute discrimination under Title II. Sheehan v. City & Cty. of San Francisco, 743 F. 3d 1211 (9th Cir. 2014).

83. Plaintiff is entitled to compensatory damages and injunctive relief under Title II of the ADA, including an order requiring Guadalupe County to implement adequate mental health crisis response protocols and equip deputies with less-lethal alternatives.


## COUNT V

### Spoliation / Tampering with Evidence – Against Defendants Dailey, Garcia, City of Schertz EMS, and GCSO


84. Plaintiff incorporates all preceding paragraphs by reference.


85. Defendant Dailey modified the raw Physio-Control cardiac monitor data the (20240606153638_279) at 18:49:41 on June 6, 2024 – thirty-one minutes after the EMS report was signed and completed. This modification was made to a file containing the only contemporaneous, machine-generated physiologic record of John's respiratory collapse during transport, including the apnea alarm. No explanation for this modification has been provided.

86. GCSO represented to Plaintiff's family that body camera footage from the June 6, 2024 incident 'may not be located.' This representation was made despite each of five deputies confirming their cameras were activated, one deputy confirming discs were dropped into evidence.

-20-

warrant sanctions, adverse inference instructions, or additional claims.

## DAMAGES

87. As a direct and proximate result of Defendants' conduct, John Albert Estrada, Jr., suffered the following injuries and damages, for which Plaintiff seeks full recovery:

(a)  Physical pain and suffering – partial thickness burns to 2% TBSA, bilateral ankle ligature injuries, scalp hematoma, neck lacerations, non-traumatic rhabdomyolysis;

(b) Medical expenses – University Health San Antonio inpatient admission June 6-10, 2024, including burn debridement, blood transfusion, imaging, laboratory studies, and psychiatric treatment;

(c) Discovery of renal cell carcinoma – diagnosed incidentally as a result of the trauma CT ordered after the June 6, 2024, incident; subsequent nephrectomy and cancer treatment costs.

(d) Emotional distress, psychological trauma, and mental anguish;

(e) Lost wages and earning capacity;

(f) Punitive damages against the individual Defendants for their malicious, reckless, or callously indifferent conduct;

(g) Attorneys' fees and costs pursuant to 42 U.S.C. section 1988 and the ADA; and

(h) Such other and further relief as the Court deems just and equitable.

-21-

**DEMAND FOR JURY TRIAL**

88. Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff demands a trial by jury on all issues triable by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Juan Alberto Estrada, individually and as Next of Kin of John Albert Estrada, Jr., respectfully prays that the Court:

1. Enter judgment in favor of Plaintiff and against all Defendants on all counts;

2. Award Plaintiff compensatory damages in an amount to be determined by the jury.

3. Award Plaintiff punitive damages against the individual Defendants in an amount sufficient to deter future misconduct.

4. Issue a declaratory judgment that Defendants violated the constitutional and statutory rights of John Albert Estrada, Jr.;

5. Issue injunctive relief requiring Guadalupe County to: (a) equip patrol deputies with tasers and other less-lethal devices; (b) implement mandatory mental health co-responder protocols; (c) conduct independent review of all body camera footage from June 6, 2024; and (d) implement independent use-of-force review procedures;

6. Award Plaintiff reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. section 1988 and the ADA;

7. Award pre- and post-judgment interest as permitted by law; and

-22-

8.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

JUAN ALBERT ESTRADA,
 Plaintiff, Individually and as Next of Kin of
John Albert Estrada Jr., Deceased

5026 Highridge Drive
Garland, TX  75043
Aactual100@gmail.com
(469) 766-3661

Filed Pro Se Pursuant to 28 U.S.C. Section 1654

Dated: June 5,  2026